**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| OWNER'S MANAGEMENT COMPANY, | CASE NO. 1:17CV881 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| vs. | OPINION AND ORDER |
| ARTHUR J. GALLAGHER & CO., et al., | |
| Defendants. | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion (ECF DKT #9) of Defendant, HealthSmart Benefit Solutions, Inc. ("HBS"), to Dismiss Counts II, IV, VI, VIII and IX of the Complaint against it Without Prejudice. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff Owner's Management Company ("OMC") filed the instant Complaint on April 25, 2017, against HBS and Arthur J. Gallagher & Co. ("Gallagher") for breach of contract, breach of fiduciary duties, negligent misrepresentation and for an accounting.

Plaintiff is an independent senior living and multi-family residences property management company. Gallagher is an insurance brokerage and risk management company. HBS is a healthcare management company.

Plaintiff had a long-standing relationship with Gallagher and relied upon Gallagher's expertise and advice for its employee healthcare benefit needs. Gallagher recommended a self-funded employee healthcare benefit plan from November 1, 2014 through October 31, 2015 that minimized Plaintiff's cost and potential exposure. Gallagher also recommended

that Plaintiff utilize HBS as Claims Administrator. On November 1, 2014, Plaintiff, as Plan Sponsor, Administrator and Fiduciary, entered into the HealthSmart Benefit Solutions, Inc. Administrative Services Agreement with HBS. (ECF DKT #1-2). Gallagher was not a party to the Agreement. According to the Complaint, however, Gallagher and HBS modified how the assets of the Plan would be managed and how the costs, including the amount of approved benefit claims, were to be paid, all without Plaintiff's knowledge or consent. As the result of the alleged failures, mismanagement and misconduct of Gallagher and HBS, the Plan was underfunded and was terminated.

The HealthSmart Benefit Solutions, Inc. Administrative Services Agreement contains the following relevant provisions:

> ¶ 1.3: <u>Scope of Undertaking</u>. [OMC] has sole and final authority to control and manage operation of the Plan. HBS is and shall remain an independent contractor with respect to the services being performed hereunder and shall not for any purpose be deemed an employee of [OMC]. HBS and [OMC] shall not be deemed partners, engaged in a joint venture or governed by any legal relationship other than that of independent contractors. HBS does not assume any responsibility for the general design of the Plan, the adequacy of funding required by the Plan, or any act or omission or breach of duty by [OMC].

Pursuant to ¶ 2.1, HBS's sole responsibilities to OMC were limited to those described in the Agreement and any Exhibits attached. HBS was to handle the claims process and care management services for the Plan. These services involved reviewing claims, substantiating benefits eligibility, corresponding with enrollees and providers regarding claim coverage, preparing plan documents, coordinating stop-loss coverage and providing medical case management. (See OMC Opposition Brief, ECF DKT #12 at 6-7).

According to ¶ 2.4, HBS and OMC agreed that HBS's duties under the Agreement were non-discretionary.

Under ¶ 3.1, OMC would make all final determinations as to entitlement to Plan benefits and would be responsible for the Plan's compliance with all applicable federal and state laws and regulations.

> ¶ 3.2: <u>Final Authority</u>. [OMC] shall have all discretionary authority and control over the management and disposition of Plan assets to the exclusion of HBS. HBS shall not exercise any authority or control with respect to the management or disposition of the assets of the Plan. HBS shall have no responsibility or liability with respect to (i) any funding of Plan Benefits ...

> ¶ 3.3: <u>Banking Arrangements</u>. [OMC] shall provide sufficient funds to cover all of its obligations under the Plan, and HBS has no duty or obligation, legal or otherwise, to make such payments should [OMC] fail to provide such funding. [OMC] specifically authorizes HBS to issue claims payment via check, electronic transfer, and/or any other valid form of payment on a bank account established and maintained in the name of [OMC].

Pursuant to ¶ 10.3, the Agreement, including any Exhibits, constituted the ***entire*** agreement between the parties with respect to the subject matter of this Agreement.

Under ¶ 10.8, in providing services to OMC under this Agreement, HBS was obliged to act only as an independent contractor and not as a fiduciary of the Plan or an employee of OMC.

Finally, the Agreement contains an arbitration provision (¶ 10.11, ECF DKT #1-2, p.11):

> <u>Dispute Resolution</u>. In the event that ***any dispute relating to this Agreement arises between HBS and Customer,*** either party may, by written notice, call a meeting regarding the dispute to be attended by executive officers of each party who shall attempt in good faith to resolve the dispute. If the dispute cannot be resolved through executive negotiation as described in the preceding sentence within thirty (30) days from the date of the initial notice, and if any party wishes to pursue the dispute, the dispute shall be submitted to ***confidential binding arbitration before a single arbitrator*** in accordance with the rules of the American Arbitration Association for commercial arbitration. The arbitrator shall have no power to award any punitive damages or exemplary damages or to ignore or vary the terms of this Agreement and ***shall***

> *be bound by the laws of the State of Texas*, without regard to provisions relating to the conflict of laws. *Arbitration shall be conducted in the location of the principal place of business of the original defending party, as identified in Section 10.10.* Each party acknowledges that it is knowingly and voluntarily waiving its right to judicial action (except to enforce the decision of the arbitrator(s)) and to a trial by jury. (Emphasis added).

On June 26, 2017, HBS moved for dismissal of Count II (breach of contract); Count IV (breach of common law fiduciary duty); Count VI (breach of ERISA fiduciary duty); and Count VIII (negligent misrepresentations or concealments) in favor of arbitration in Texas. HBS also contends that Count IX (accounting) is simply a remedy which rises or falls with the substantive claims. For its part, OMC is willing to stipulate to a stay of Count II pending arbitration; but contests that any of the other claims against HBS are subject to the arbitration provision in the Agreement.

## II. LAW AND ANALYSIS

**The Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1, *et seq*.**

The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003). The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2003). The FAA establishes a liberal policy favoring arbitration agreements and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004); see *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration

agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 891 (Tex.2010) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4 (2003). The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960); *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26.

In determining whether to grant motions to dismiss in favor of arbitration, courts must apply a four-pronged test: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be arbitrated; and (4) whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000).

In the instant case, OMC does not dispute the existence and validity of the arbitration

clause in ¶ 10.11. As to the federal statutory claims under ERISA, the United States Supreme Court noted: "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the Act in controversies based on statutes." *Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987) (internal citations omitted). Thus, the centerpiece of OMC's dispute is the scope of the Agreement.

As a threshold matter, then, the Court determines whether or not an issue is within the scope of the parties' arbitration agreement. *Stout*, 228 F.3d at 714. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir.1998). The Sixth Circuit instructs as follows:

> When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Solvay Pharms., Inc. v. Duramed Pharms., Inc*., 442 F.3d 471, 482 n.10 (6th Cir. 2006) (internal citations omitted).

OMC contends that HBS undertook fiduciary duties with respect to Plan assets that were wholly outside the contemplated Plan Administration relationship. Furthermore, according to OMC, the parties never contemplated a fiduciary relationship and could never have agreed to arbitrate such a dispute.

Examining the clear language of the arbitration provision, the Court finds that OMC's arguments are unavailing and finds that the claims against HBS are arbitrable.

Broadly, OMC alleges that HBS, in concert with Gallagher, wrongfully modified the parties' Agreement and relationship. Paragraph 1.3 of the Agreement defines the scope of the parties' undertaking. Paragraphs 2.1 and 9.1 delineate the obligations, responsibilities and duties of HBS under the Plan. Paragraph 10.8 describes the relationship of the parties. Thus, the Court finds that any "modification" could run afoul of these provisions and the integration clause (¶ 10.3).

OMC points out a number of examples of HBS's allegedly wrongful conduct which OMC asserts "are beyond the contemplated scope of HBS's services in the Agreement." (OMC's Opposition Brief, ECF DKT #12 at 7-8).

- HBS was obligated to notify OMC of the "amount needed to pay approved benefit claims and [OMC] shall transfer or authorize payment from the bank account in order to fund Plan benefits." (OMC cites ¶ 3.3). Instead, HBS sent the invoices directly to Gallagher who sent them to OMC; and the invoice amounts did not reflect the approved benefits amounts.

- HBS improperly shredded checks from OMC, resulting in underfunding of the Plan. (See ¶¶ 2.1 and 2.1(c)).

- HBS failed to properly manage and account for Plan funds and failed to establish a bank account. (See ¶¶ 2.1; 3.2; 3.3).

- HBS's funding procedure was in violation of Plan documents. (See ¶¶ 1.3; 3.2; 3.3).

- HBS exercised improper authority and control over Plan funds and improperly funded the Plan, resulting in denial of claims due to underfunding. (See ¶¶ 1.3; 3.2; 3.3).

- Due to underfunding, HBS improperly denied claims and made representations to providers and beneficiaries regarding OMC and the Plan. (See ¶¶ 2.1; 3.1; 3.2).

As evidenced by this brief recitation, OMC itself has made reference to the Agreement and specific Agreement provisions. In other instances, the Court has determined that certain Agreement provisions likely apply to OMC's examples of HBS's alleged misconduct.

The arbitration provision at issue here is broadly worded to cover "any dispute relating to this Agreement," and it does not expressly exclude any specific disputes. Furthermore, the Court is convinced that the instant case between OMC and HBS absolutely cannot be resolved without reference to the Agreement. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007). Arbitration of the claims asserted against HBS is appropriate.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #9) of Defendant, HealthSmart Benefit Solutions, Inc. ("HBS"), to Dismiss Counts II, IV, VI, VIII and IX of the Complaint against it Without Prejudice is granted in favor of arbitration pursuant to the terms of ¶ 10.11 of the HealthSmart Benefit Solutions, Inc. Administrative Services Agreement (ECF DKT #1-2).

**IT IS SO ORDERED.**

             **s/ Christopher A. Boyko**
             **CHRISTOPHER A. BOYKO**
             **United States District Judge**

Dated: November 20, 2017